Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
E-Mail:        mark@markmerin.com
                paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF ASAIAH WASHINGTON,
TONETTE WASHINGTON, and JADAH WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON, | Case No. |
| Plaintiffs, | **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** |
| vs. | **DEMAND FOR JURY TRIAL** |
| COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, | |
| Defendants. | |

## **INTRODUCTION**

40-year-old ASAIAH WASHINGTON was denied necessary medical attention and inadequately monitored as a pretrial detainee at the Sacramento County Main Jail by the jail staff employed by the SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT resulting in his death on July 26, 2024.

## **JURISDICTION & VENUE**

1.      This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to

1

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Washington v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

address deprivations, under color of state authority, of rights, privileges, and immunities protected by the United States Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2.     Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.     Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.     On September 24, 2024, the ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. Claim No. L2400732.

5.     On September 30, 2024, the COUNTY OF SACRAMENTO submitted a Notice of Insufficiency which identified two alleged deficiencies in the government claim: (1) "The claim fails to state the name(s) of the public employee(s) causing the injury, damage or loss, if known"; and (2) "The claim fails to state the amount claimed as of the date of presentation, the estimated amount of any prospective injury, damage or loss so far as known or the basis of computation of the amount claimed."

6.     On October 15, 2024, the ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON submitted a substantially compliant revised government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action, including correcting the two alleged deficiencies in the government claim.

7.     On June 2, 2025, the ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON submitted a substantially compliant amended government claim to the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES.

8.     By July 17, 2025, the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

2

1   SHERIFF'S DEPARTMENT, and SACRAMENTO COUNTY DEPARTMENT OF HEALTH

2   SERVICES failed or refused to take action on the government claim.

3                                    **PARTIES**

4          9.     Plaintiff ESTATE OF ASAIAH WASHINGTON appears by and through real-party-in-

5   interest Plaintiff TONETTE WASHINGTON, the legal spouse of ASAIAH WASHINGTON, who brings

6   this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff TONETTE

7   WASHINGTON brings this action as the successor-in-interest on behalf of ASAIAH WASHINGTON

8   Plaintiffs TONETTE WASHINGTON's declaration regarding status as the successor-in-interest to

9   ASAIAH WASHINGTON is attached, pursuant to California Code of Civil Procedure § 377.32.

10         10.    Plaintiff TONETTE WASHINGTON is a resident of the County of Sacramento,

11  California. Plaintiff TONETTE WASHINGTON was the legal spouse of ASAIAH WASHINGTON

12  prior to his death. Plaintiff TONETTE WASHINGTON brings this action: (1) in a representative

13  capacity, as the successor-in-interest on behalf of ASAIAH WASHINGTON; and (2) in an individual

14  capacity, on behalf of herself.

15         11.    Plaintiff JADAH WASHINGTON is a resident of the County of Sacramento, California.

16  Plaintiff JADAH WASHINGTON is the biological child of ASAIAH WASHINGTON. Plaintiff JADAH

17  WASHINGTON brings this action in an individual capacity, on behalf of herself.

18         12.    Defendant COUNTY OF SACRAMENTO is located in the County of Sacramento,

19  California. Defendant COUNTY OF SACRAMENTO is a "public entity" pursuant to California

20  Government Code § 811.2.

21         13.    Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES is

22  located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY

23  DEPARTMENT OF HEALTH SERVICES is a "public entity," pursuant to California Government Code

24  § 811.2.

25         14.    Defendant ERIC SERGIENKO was, at all times material herein, Chief Medical

26  Officer/Medical Director for Defendants COUNTY OF SACRAMENTO and SACRAMENTO

27  COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under

28  color of state law. Defendant ERIC SERGIENKO is sued in an individual capacity.

15.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

16.     Defendant JIM COOPER is and was, at all times material herein, Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

17.     Defendants DOE 1 to 20 are and/or were agents, contractors, or employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and/or SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

18.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### Healthcare at the Sacramento County Jail

19.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER are responsible for taking charge of and keeping county jail facilities and the inmates in it, and are answerable for the inmates' safety and security, pursuant to California law and Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's written policies. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER are responsible for the actions and inactions and the policies and customs of their employees, agents, and contractors, and for supervising all aspects of the jail facilities under their supervision, including inmates' access to safe and secure housing and competent healthcare.

20.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES and ERIC SERGIENKO are/were responsible for the provision of healthcare services to inmates in county jail facilities, and are/were answerable for the inmates' healthcare, pursuant to Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH

4

SERVICES's written policies. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO are/were responsible for the actions and inactions and the policies and customs of their employees, agents, and contractors, and for supervising all aspects of the healthcare services under their supervision, including intake evaluations, housing, assessments, monitoring, and treatment/safety planning.

21.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained a policy or custom of providing inadequate healthcare services to the inmates, including where healthcare staff were not available to evaluate, treat, and/or refer for specialized treatment inmates demonstrating urgent medical/mental health needs; and where untrained and unqualified correctional staff were required to make medical decisions relating to the care of inmates demonstrating urgent medical/mental health needs.

**Asaiah Washington**

22.     ASAIAH WASHINGTON was 40 years old when he died on July 26, 2024.

23.     ASAIAH WASHINGTON suffered from diagnosed disabilities, including a schizoaffective disorder (bipolar type) and substance use disorder.

24.     ASAIAH WASHINGTON's disability required hospitalization and treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self, concentrate, think, and communicate. ASAIAH WASHINGTON was prescribed medications for his disability on occasion, including for detoxification.

25.     ASAIAH WASHINGTON suffered from the effects of his disabilities at the time of his incarceration and death, including from June 25, 2024, to July 26, 2024.

**Arrest & Booking**

26.     On June 25, 2024, around 4:17 p.m., ASAIAH WASHINGTON arrested and transported to the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

27.     ASAIAH WASHINGTON's jail records reported that he was subject to a "Remand Rearrest" in cases which were subject to mental health diversion.

28.     ASAIAH WASHINGTON's jail records reported "Current Problems," including

5

"Schizoaffective disorder, bipolar type," "FOSS III," "Serious Mental Illness (SMI)," "Cannabis abuse," "Methamphetamine abuse."

29.    ASAIAH WASHINGTON's jail records reported "Current Medications," including "ACETAMINOPHEN 500 MG ORAL TABLET (ACETAMINOPHEN)," "BUSPIRONE HCL (BUSPAR) TAB 10 MG (BUSPIRONE HCL)," "QUETIAPINE FUMARATE (SEROQUEL) TAB 400 MG (QUETIAPINE FUMARATE)," and "METFORMIN HCL 500 MG ORAL TABLET (METFORMIN HCL)."

30.    Around 3:54 p.m., Shaletha Harris, a registered nurse (RN), reported "Housing Recommendation for SSO [Sacramento Sheriff's Office]," including "MAT [mediation -assisted treatment] Induction Housing - Opioids or Opioids and other substances" and "Detox Housing - Alcohol and/or benzodiazepines only."

31.    Around 4:17 p.m., ASAIAH WASHINGTON was booked as a pre-trial detainee into the jail and housed at 8 East 300 11 Lower.

**Medical Care**

32.    On June 26, 2024, around 4:52 p.m., Yong Eo, a registered nurse (RN), reported "physically patient is not in booking transferred to 8E Per booking custody, unable to give meds."

33.    On July 3, 2024, ASAIAH WASHINGTON submitted a handwritten Health Services Request Form (HSR# 7872) to the jail staff which stated: "I am missing my medication for my mental well being."

34.    On July 5, 2024, ASAIAH WASHINGTON submitted a handwritten Health Services Request Form (HSR# 7866) to the jail staff which stated: "I suffer from bi polar sczeprenia. i need a tabet. my thoughts are spiraling out of control."

35.    On July 11, 2024, Taelim Kim, a social worker (SW1), reported conducting a "MH Assessment: Mental Health Assessment-Reopen," including: "Writer saw pt. this date for mental health assessment-reopen. Pt reported current mood as 'depressed, anxious' related to being in custody. Pt shared he is currently linked with BACS and reported he will most likely get released after court on 7/23/24; MH D/C planner referral made. Pt stated 'Seroquel' helps with 'calming my mind.' . . . Pt reported endorsing AH, hearing voices; denied CAH. Pt identified writing as coping skill. . . . Pt seen in

6

unconfidential location in the indoor rec area d/t confidential space unavailable. . . . Pt was informed that writer is unlicensed, registered with BBS and receiving clinical supervision."

36.     On July 18, 2024, around 9:06 a.m., Jenny McCormack, a nurse practitioner (NP), reported a "MH Clinical Record (SOAP)-OP clinic," including: "40-year-old English-speaking male with history of SADBPT seen for re-open. IPE completed on 3/26/24. Patient reports AVH and requesting to re-start AM Seroquel. . . . [¶] -Continue Seroquel 400mg qHS. [¶] -Continue Buspar 10mg qAMHS. [¶] -Start Seroquel 100mg qAM. [¶] -RTC 4 weeks and as needed if still in custody. [¶] -Last jail panel completed in May 2023 - dyslipidemia."

37.     Defendants SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, and DOE 1 to 10 were deliberately indifferent to ASAIAH WASHINGTON's serious medical needs, where they made an intentional decision with respect to ASAIAH WASHINGTON's conditions of confinement which created a substantial and obvious risk harm, including causing ASAIAH WASHINGTON to engage in drug-seeking and self-medicating behaviors, and they did not take reasonable available measures to abate that risk, including timely and sufficiently assessing, evaluating, diagnosing, housing, monitoring, treating, and summoning care, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the medical history, grievances, and observed serious medical needs.

38.     Defendants SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, and DOE 1 to 10 failed to utilize appropriate policies, training, standards, and procedures, including in violation of California Code of Regulations title 15 § 1207 (Medical Receiving Screening), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), and § 1213 (Detoxification Treatment); National Commission on Correctional Health Care, Standards for Health Services in Jails (NCCHC) Standard J-F-01 (Ongoing Care for Chronic Illness), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment); Adult Correctional Health (ACH) Standard 01-12 (Access to Care), Standard 04-08 (Specialty Referrals), Standard 04-09 (Medical Transportation), Standard 04-22 (Hospital Care), Standard 05-02 (Medication Assisted Treatment), Standard 05-05 (Nurse Intake), Standard 05-06 (Methadone Treatment), Standard 05-07 (SUD Counselor), Standard 05-13 (Initial History and Physical Assessment), Standard 06-02 (Patients with

Disabilities); Standardized Nursing Procedures (SNP) re: Benzodiazepine Withdrawal Treatment, Opiate Withdrawal Treatment; Adult Correctional Health Standardized Nursing Procedures, Substance Use Disorders (SUD) Policy re: Opioid Withdrawal Treatment, Opioid Withdrawal Monitoring and Treatment; Adult Correctional Health, Division of Primary Health, Department of Health Services, Policy and Procedure, Policy 05-02 (Medication Assisted Treatment); Sacramento County Adult Correctional Health, Division of Primary Health, Department of Health Services (MH) Policy 01-10 (Access to Mental Health Services), Policy 03-04 (Acute Psychiatric Nursing Responsibilities), Policy 4-03 (Basic Mental Health Services), Policy 04-04 (Acute Psychiatric Unit Admission, Program, and Discharge), Policy 07-02 (Treatment Planning); and Jail Psychiatric Services (JPS) Policy 701 (Inpatient Nursing Admission Procedure), Policy 805 (Acute Inpatient Unit to General Population), Policy 1021 (Acute Inpatient Nursing Staff Responsibilities), Policy 1037 (Outpatient Intake).

**Contraband**

39.     ASAIAH WASHINGTON had access to illicit drugs while incarcerated at the jail, including fatal quantities of fentanyl.

40.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's correctional facilities are overrun with contraband, including illicit drugs, which is readily available to inmates.

41.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 11 to 20 were responsible for the personal safety of inmates at jail facilities, including detecting and preventing inmates' access to dangerous contraband.

42.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 11 to 20 were deliberately indifferent to ASAIAH WASHINGTON's personal safety, where they made an intentional decision with respect to ASAIAH WASHINGTON's conditions of confinement which created a substantial and obvious risk harm, including causing ASAIAH WASHINGTON's access and exposure to dangerous contraband, and they did not take reasonable available measures to abate that risk, including sufficiently searching, screening, and monitoring inmates' access to illicit drugs, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including the history of widespread availability of

8

1   contraband and inmate overdoses.

2       43.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

3   DEPARTMENT, JIM COOPER, and DOE 11 to 20 failed to utilize appropriate policies, training,

4   standards, and procedures, including in violation of California Code of Regulations title 15 § 1027.5

5   (Safety Checks); California Commission on Peace Officer Standards and Training (POST) Learning

6   Domain 12 (Controlled Substances), Learning Domain 31 (Custody); Sacramento County Sheriff's

7   Department Custody Procedure Manual Procedure 504 (Cell Checks), Procedure 512 (Searches),

8   Procedure 521 (Body Scanner), Procedure 711 (Detoxification and Withdrawal), Procedure 1009

9   (Visitation); Sacramento County Sheriff's Department Deputy Sheriff Training Manual; and Sacramento

10  County Sheriff's Department Training Module Re: "Person Searches," "Sacramento County Main Jail

11  Booking and Intake Procedures."

12                                  **Monitoring**

13      44.    On July 26, 2024, ASAIAH WASHINGTON and his cellmate ingested fentanyl which

14  caused them to experience a medical emergency, including loss of consciousness.

15      45.    Defendants DOE 11 to 20 were responsible for supervising and monitoring ASAIAH

16  WASHINGTON, including through direct visual safety checks and closed-circuit television (CCTV)

17  monitoring of the area in the jail which ASAIAH WASHINGTON was housed, 8 East 300.

18      46.    Defendants DOE 11 to 20 failed to detect that ASAIAH WASHINGTON ingested a fatal

19  quantity of fentanyl and failed to detect and/or ignored ASAIAH WASHINGTON's medical emergency

20  resulting from the ingestion of fentanyl.

21      47.    Defendants DOE 11 to 20 knew or should have known that ASAIAH WASHINGTON

22  had access to a fatal quantity of fentanyl, that ASAIAH WASHINGTON ingested a fatal quantity of

23  fentanyl, and that ASAIAH WASHINGTON was experiencing a medical emergency, including based on

24  the ability to observe and search ASAIAH WASHINGTON's person and cell.

25      48.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

26  DEPARTMENT, and DOE 11 to 20 were deliberately indifferent to ASAIAH WASHINGTON's

27  personal safety and serious medical needs, where they made an intentional decision with respect to

28  ASAIAH WASHINGTON's conditions of confinement which created a substantial and obvious risk

                                       9

1  harm, and they did not take reasonable available measures to abate that risk, including sufficiently

2  monitoring, supervising, and summoning care for ASAIAH WASHINGTON, and a reasonable official in

3  the circumstances would have appreciated the high degree of risk involved, including the history of

4  widespread availability of contraband and inmate overdoses.

5       49.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

6  DEPARTMENT, and DOE 11 to 20 failed to utilize appropriate policies, training, standards, and

7  procedures, including in violation of California Code of Regulations title 15 § 1027.5 (Safety Checks);

8  California Commission on Peace Officer Standards and Training (POST) Learning Domain 12

9  (Controlled Substances), Learning Domain 31 (Custody); Sacramento County Sheriff's Department

10 Custody Procedure Manual Procedure 504 (Cell Checks), Procedure 512 (Searches), Procedure 521

11 (Body Scanner), Procedure 704 (Emergency Health Care Services), Procedure 711 (Detoxification and

12 Withdrawal), Procedure 713 (Suicide Prevention and Intervention), Procedure 1009 (Visitation);

13 Sacramento County Sheriff's Department Deputy Sheriff Training Manual; and Sacramento County

14 Sheriff's Department Training Module Re: "Person Searches," "Sacramento County Main Jail Booking

15 and Intake Procedures."

16      50.    Around 11:10 a.m., Defendant DOE 11 reported over the radio that ASAIAH

17 WASHINGTON and his cellmate were "man-down" and non-responsive in a cell.

18      51.    Mike Wanless, a doctor of pharmacy (PharmD), reported: "1110 --Heard over radio

19 multiple patients man down non responsive first narcan given, CPR started. Grabbed extra Kloxxado and

20 Narcan and proceeded to 8E300 [¶] 1116 -- arrived at 1116, two victims, CPR and AED on both victims

21 [¶] 1116 -- AED no shock advised [¶] 1118 -- naloxone 8 mg intranasal given, AED analyzed no shock

22 advised CPR continued [¶] 1120 -- naloxone 8 mg intranasal given [¶] 1123 -- Dr Fadaki ordered Epi

23 1:10,000 and given [¶] 1125 -- naloxone 2mg IV given [¶] 1126 -- Blood Glucose 267 [¶] 1135 -- Epi #2

24 1:10,000 given by EMS [¶] 1137 -- AED analyzed, no shock advised, Continue CPR [¶] 1139 -- AED

25 analyzed, no shock advised, Continue CPR [¶] EMS took over, continued CPR [¶] Time of Death 1151

26 [¶] total naloxone given 24 mg intranasal, 2 mg IV."

27      52.    At 11:51 a.m., ASAIAH WASHINGTON was declared dead.

28      53.    On September 4, 2024, the Sacramento County Coroner's Office reported ASAIAH

10

WASHINGTON's cause of death as "Fentanyl and Methamphetamine Intoxication."

<u>**POLICY / CUSTOM ALLEGATIONS**</u>

54.     Defendant ERIC SERGIENKO has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES Chief Medical Officer/Medical Director from March 2024 to February 2025. Defendant ERIC SERGIENKO, in his capacity as Medical Director, was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, including as it relates to the provision of basic healthcare/medical services to inmates at jail facilities and developing and implementing individualized treatment plans; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his care.

55.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO, including subordinate personnel Defendants DOE 1 to 10, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     Failure to medically screen inmates/patients;

(b)     Failure to initiate and perform protocols and procedures for at-risk inmates/patients, including detoxification and withdrawal assessments;

(c)     Failure to recognize inmates/patients' serious medical needs;

(d)     Failure to send inmates/patients to a hospital or facility for serious medical needs;

(e)     Failure to accurately/truthfully report information in inmates/patients' medical records; and/or

(f)     Failure accurately/truthfully to report inmates/patients' condition to jail staff.

56.     Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Sheriff from December 2022 to present. Defendant JIM COOPER is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail facilities; training, supervision, and discipline of personnel acting under his command; and the safekeeping of inmates/prisoners in his custody. For example,

1    Defendant JIM COOPER is and was responsible for the personal safety of and medical care provided to

2    inmates/prisoners in Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY

3    SHERIFF'S DEPARTMENT's custody, including detection and interdiction of contraband and all

4    policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

5        57.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

6    DEPARTMENT, and JIM COOPER, including subordinate personnel Defendants DOE 11 to 20,

7    maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in

8    the following deficiencies:

9            (a)    Failure to search, screen, and interdict for contraband in jail facilities;

10           (b)    Failure to observe, monitor, and supervise inmates/patients;

11           (c)    Failure to detect, investigate, intervene, or intercede when dangerous and

12   emergency conditions are present in jail facilities; and/or

13           (d)    Failure to summon and provide necessary care for inmates/patients' serious

14   medical needs.

15       58.    _Mays_ Consent Decree & Monitoring: Since January 2020, Defendants COUNTY OF

16   SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

17   SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and their

18   personnel have been subject to a jail conditions consent decree entered in _Mays v. County of Sacramento_,

19   No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020). Defendants COUNTY OF

20   SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

21   SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies

22   and customs are largely non-compliant with the terms of the court-ordered consent decree. For example,

23   monitoring reports prepared by court-appointed experts pursuant to the consent decree continuously

24   demonstrate non-compliance:

25           (a)    On January 20, 2021, the First Monitoring Report of Medical Experts found, for

26   75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance

27   with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not

28   evaluated. _Mays_, _supra_, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021). Specifically, the review's findings

12

were "deeply concerning." *Id*. For example, "[t]here are serious and systemic issues resulting in harm to patients, including hospitalizations and death," *id*. at 7–8, "[t]he sick call system does not provide timely access to care," *id*. at 8, "[t]here are excessive delays in transporting patient[s] to the hospital," *id*. at 9, and "[t]here are serious nursing and medical quality of care issues," *id*. at 9. The report made an "alarming finding [] that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted in hospitalizations and deaths," and that, even when physicians are notified, "physicians also minimized patient clinical findings and failed to adequately treat their underlying chronic medical conditions." *Id*. at 9. "These cases may reflect a wider cultural issue at the jail in how health care personnel view their obligations to provide timely, appropriate and compassionate care to patients." *Id*. at 9.

(b)    On October 4, 2021, the Second Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 149-1 at 13 (E.D. Cal. Oct. 4, 2021). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." *Id*. at 12. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 11–12. The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." *Id*. at 9.

(c)    On October 25, 2022, the Third Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 162-1 at 14 (E.D. Cal. Oct. 25, 2022). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and

quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." *Id*. at 13. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 10–12. The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." *Id*. at 6. The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." *Id*. at 28.

(d)    On August 15, 2023, the Fourth Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." *Id*. For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." *Id*. at 11–12. A "detailed case reviews show[ed] multiple lapses in care in many records." *Id*. at 13 n.21. The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." *Id*. at 22.

(e)    On July 16, 2024, the Fifth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 24 provisions (30%), partial compliance with 31 provisions (41%), and non-compliance with 23 provisions (29%). *Mays*, *supra*, ECF

No. 180-1 at 8 (E.D. Cal. July 16, 2024). Specifically, the review found that "there has been ongoing noncompliance with key provisions of the *Mays* Consent Decree that result in ongoing harm to the patient population at Sacramento County Jail. These include: • Lack of custody medical escorts to conduct health care operations; • Custody obstructing access to care, resulting in harm and preventable hospitalization; • RCCC inmates being empowered to control other inmates' access to health services request and grievance forms; • Ongoing lack of privacy in the booking area, causing demonstrable harm to patients[;] • Failure of the access to care system (nurse sick call); • Ongoing serious medication errors caused by the pharmacy system, medical providers, and nurses, resulting in preventable harm and hospitalizations; and • System and quality issues related to medical screening and use of the sobering cell. . . . [W]e are obligated to note that these conditions have existed since the beginning of the *Mays* Consent Decree, are causing ongoing harm, and must be immediately and definitively corrected." *Id.* at 8–9 (fns. omitted).

(f)      On August 14, 2024, *Mays* court-appointed medical experts sent a letter regarding "Recent Mortalities at Sacramento County Jail," including ASAIAH WASHINGTON's death which was one of "five deaths in the Sacramento County Jails" since "May 2024." Therein, the medical experts "recommend[ed] … critical corrective actions" and determined: "Review of these deaths showed serious system and individual performance issues, including inadequate emergency response [and] inadequate medical care prior to death… [¶] Through review of medical records and video footage, we concluded that some of the recent deaths in the jail may have been preventable. We also determined that immediate action must be taken by ACH [Adult Correctional Health] and the Sacramento Sheriff's Office (SSO) to address dangerous deficiencies in current practices." *Recent Mortalities at Sacramento County Jail* (Aug. 14, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.14%20Letter%20to%20Sacramento%20County%20Regarding%20Mortalities%20in%202024_Redacted.pdf>.

(g)      On August 19, 2024, *Mays* court-appointed class counsel sent a letter regarding the "wave of deaths in the Sacramento County Jails in recent months." Therein, class counsel found: "For years, we have raised concerns about the custody culture of the Sacramento Sheriff's Office. Having reviewed the surveillance and body-worn camera footage of several recent deaths, we write to again

express our deep concern about the SSO's failure to respond with humanity and decency to people in need. * * * This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the court-appointed experts have reported for years about these profound cultural problems. * * * The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office. The Sheriff must take accountability for the apathy and callousness that pervades the jail and exercise leadership to make immediate changes. Sacramento County should demand decency for the people it incarcerates." *Letter to Sheriff Cooper* (Aug. 19, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>.

(h)    On January 27, 2025, the Sixth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 15 provisions (19%), partial compliance with 40 provisions (51%), and non-compliance with 24 provisions (29%). *Mays*, *supra*, ECF No. 197-1 at 8 (E.D. Cal. Jan. 27, 2025). Specifically, the review found that "Patient access to a medical provider has worsened since the last review period"; "Patients lack timely access to specialty services which has resulted in patient harm"; "Patients with chronic diseases are not consistently provided care in accordance with nationally recognized chronic disease guidelines"; "The County has not conducted regular evaluations of provider quality resulting in continuation of care that does not meet current medical care guidelines"; and "The County lacks adequate medical leadership at the jail." *Id*. at 8–17.

59.    Overdose & Withdrawal: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates/patients' serious medical needs, including overdose, detoxification, and withdrawal. For example:

(a)    On January 27, 2025, the *Mays* consent decree monitors reported inmates used drugs in the jail "because [they] felt so bad from withdrawing and just wanted to feel better." *Mays*, *supra*, ECF No. 197-1 at 38 (E.D. Cal. Jan. 27, 2025). "Timely administration of once time per day doses of Suboxone is critical to avoid the patient experiencing cravings, which often leads to using opiates and

increased risk of overdose." *Id.* at 91. "[A] patient, prescribed medications for the treatment of withdrawal from alcohol and opiates, was scheduled for medication administration at 07:30, 09:30, 15:30, and 21:30. Review of the patient's MAR over a randomly selected nine-day period, showed he timely received medications 45% (9 of 20 doses) of the time. The review also found that this patient did not receive the ordered medications before going to court, resulting in a missed dose of medication." *Id.* at 91 (fn. omitted). "The monitors interviewed a patient at RCCC who had been transferred from the Main Jail early that morning. He was scheduled to receive Suboxone for the treatment of his opioid substance use disorder. He reported being pulled from his unit around 06:00 and did not receive his Suboxone dose scheduled for 07:30.163 The nurse conducting medication administration was observed telling the patient she did not have medication for him and that he would 'probably get it tomorrow.'" *Id.* (fn. omitted). "Another patient was prescribed a daily dose of Suboxone for the treatment of opiate substance use disorder. A review of a random 10-day period in May and June 2024 found that only 30% (3 out of 10 doses) of doses were timely administered." *Id.* (fn. omitted). The report "highlight[ed] the continued failure of the County to halt the inflow of fentanyl and other drugs." *Id.* at 131. "[T]he County has not provided patients experiencing, or at risk of substance use withdrawal, timely medical evaluation, treatment, and monitoring. Several significant issues still place patients at risk of harm. These problems include lack of: [¶] 1. Timely and accurate identification of patients with substance use disorders at intake who may be at risk of withdrawal. [¶] 2. Medical evaluation and treatment for patients at risk of moderate to severe withdrawal, and failure to medically monitor patients in detox units. [¶] 3. Timely nursing withdrawal monitoring. [¶] 4. Medical rounds in the detox unit to assess patients for the effectiveness of treatment and readiness for discharge from the unit. [¶] We also found: [¶] 5. Inaccurate nursing withdrawal assessments and under-scoring of symptoms results in artificially low CIWA and COWSS scores. [¶] 6. Nurses routinely accepting patient's refusals for withdrawal assessments (e.g., CIWA, COWS, etc.) from custody, or because the patient does not want to ambulate out of bed or their cell. [¶] 7. Delayed treatment of patients with withdrawal symptoms. [¶] 8. Delays in initiating MAT for patients with SUD resulting in patients seeking Fentanyl to relieve symptoms and overdosing. [¶] 9. Concerns with the accuracy of detoxication audits." *Id.* at 127–28.

(b)    On May 12, 2024, 55-year-old David Barefield died of an overdose at the

17

Sacramento County Main Jail. The *Mays* consent decree class counsel described "the tragic death" as "reflect[ing] [] broader and long-standing concerns. [¶] In May 2024, an unhoused, middle-aged, Black man was brought into the jail in the middle of the night. Because he was unable to stand on his own, arresting officers dragged him through the parking lot and into the jail to begin the intake process. The SSO [Sacramento Sheriff's Office] has informed us that the man was arrested due to outstanding warrants for trespassing and petty theft, not because he had any new charges. [¶] From the moment he entered the jail, the man was unable to stand. In the arrest reports room—the first stop in the intake process—the Certified Nursing Assistant (CNA) could not take his vital signs because he was shaking and unable to remain still. He soon fell to the floor, where he remained for several minutes. Video footage shows that while the man was lying on the floor, the arresting officer from the Sacramento Police Department appeared to casually engage in a conversation with the CNA. Neither the arresting officer nor the CNA showed any alarm that this man was lying on the floor and unable to stand on his own; they continued having a conversation over his body. Eventually, a staff member decided to remove the man from the floor. But instead of getting a wheelchair to transport him through the booking process or considering whether his inability to stand suggested a need for hospitalization, staff placed him in a cart intended for short-term use for transporting combative arrestees. He remained in that cart for the next two and a half hours. [¶] Around 2 AM—about an hour after the man arrived at the jail—a Registered Nurse assigned to the intake area of the jail engaged in a brief conversation with him. The conversation, which lasted less than four minutes, was the extent of the medical evaluation to determine whether this person was medically fit for incarceration. The nurse conducted the 'medical intake' within earshot of other arrestees in the non-confidential part of the arrest reports room. The nurse failed to ask required medical intake questions, then falsified information on the medical intake form. After this less-than-four-minute-long conversation, the nurse cleared the man as medically fit for incarceration. These egregious failures by medical staff will be the subject of a forthcoming letter by the federal court-appointed medical experts. [¶] The man remained alone, laying in the cart, for the next 90 minutes, with minimal interaction with any staff members. Around 3:30 AM, the SSO took formal 'custody' of the man and began the custodial intake process. The SSO deputies dragged him out of the cart, but he was still unable to stand on his own. Minutes later, deputies placed him back into the cart. By that point, he had defecated on

himself and was covered in feces. [¶] The deputies then decided to drag the man's mostly limp body through the intake process. They pulled him out of the cart and yelled at him, 'Stop playing games!' They then brought him out of the arrest reports room and conducted a pat-down body search on him. As they dragged him, his pants came down, leaving him completely exposed from the waist down. [¶] The man remained unable to form a coherent sentence and appeared largely incapable of motion. Nonetheless, the deputies persisted in processing him through the standard intake protocol. They dragged his motionless body down the hallway, cuffed and facedown on the floor. At 3:39 AM, deputies dragged him to the photo station so that they could take his intake photo. Because the man could not hold his head up on his own, deputies grabbed him by his hair and yanked his slumped head against the wall so that they could capture the intake photo. The surveillance video shows the man on his knees with his genitals exposed as two deputies hold his nearly lifeless head up by his hair. His booking photo similarly shows two deputies' black-gloved fists grabbing his hair to hold his head up. [¶] Deputies then turned the man to the side and again yanked his hair back to take a booking photo from his profile. At that point, he was mumbling, 'I am Jesus Christ' and other incoherent noises. His voice sounded drowsy, like it was difficult for him to form sounds. He demonstrated no resistance, either verbally or physically, at any point. [¶] At 3:41 AM, deputies uncuffed the man so they could scan his fingerprints. The man's limp body laid near the fingerprint station as the deputy moved his arm around to capture a viable fingerprint scan. A minute later, the intake nurse walked by the fingerprint station. A sergeant who was seated nearby observing this intake process asked the nurse whether the man had cleared medical intake. The nurse responded, 'His vitals were fine. He's just old and homeless.' The nurse briefly walked back to look at the patient, and then said, 'He's breathing. He's just uncooperative.' The nurse then walked away. [¶] Minutes later, after completing the fingerprint scan, deputies finally appeared to acknowledge that this person needed immediate medical attention. They began asking him if he was okay, and they checked for his pulse. At 3:46 AM, life-saving care was initiated, and custody staff called the Fire Department. At 4:20 AM, he was pronounced dead. [¶] Video footage shows no evidence of custody staff verbally abusing this man, but the story of his death highlights a profound and persistent problem with the Sheriff's Office—callousness, apathy, and unacceptable tolerance for human suffering. The deputies who processed this man through the booking process did so with no regard for his extreme

physical distress. An hour before he died, they told him he was playing games because he was unable to stand. They did not deviate from their standard booking protocol for a person in the final moments of his life. They grabbed him by the hair to take his intake photo. As he laid on the floor, they held his limp hand on the fingerprint scanner to make sure his fingerprints were captured in the system. They were simply going about business as usual." Finally, class counsel concluded: "This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the court-appointed experts have reported for years about these profound cultural problems. * * * The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office. The Sheriff must take accountability for the apathy and callousness that pervades the jail and exercise leadership to make immediate changes. Sacramento County should demand decency for the people it incarcerates." *Letter to Sheriff Jim Cooper* (Aug. 19, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>; *see also Mays*, *supra*, ECF No. 197-1 at 143–145 (E.D. Cal. Jan. 27, 2025). A civil rights lawsuit was filed. *Estate of Barefield v. City of Sacramento*, No. 2:24-cv-03427-TLN-JDP (E.D. Cal.). The case was settled pre-trial against the County of Sacramento for $3,500,000.

(c)     On May 5, 2024, 45-year-old inmate Lope Tolosa died at the Sacramento County Jail. Three days earlier, Tolosa was admitted to the jail intoxicated and detoxification housing was ordered. The medical staff did not medically evaluate Tolosa for withdrawal treatment at any time prior to his death. Nine hours after admission, the nurse who was to conduct withdrawal monitoring made no attempt to locate Tolosa. Tolosa was found minimally responsive inside of his cell by a deputy. In response, the deputy went to another floor of the jail, found a nurse, and told the nurse that Tolosa needed medical attention. But the nurse did not respond to Tolosa's location and instead told the deputy to call downstairs. Tolosa died. The *Mays* medical expert monitors described the incident as follows: "In summary, this case represents a failure to medically evaluate, treat, and monitor the patient who was at risk for alcohol withdrawal and death. It also represents a failure of emergency response. In the mortality review, the Medical Director did not include key system and individual performance issues that needed to be addressed. This fails to meet the requirements of the Consent Decree, and this death may have been

preventable." *Recent Mortalities at Sacramento County Jail* (Aug. 14, 2024), available at:

<https://www.disabilityrightsca.org/system/files/file-

attachments/24.08.14%20Letter%20to%20Sacramento%20County%20Regarding%20Mortalities%20in

%202024_Redacted.pdf>. A civil rights lawsuit was filed. *Tolosa v. County of Sacramento*, No. 2:25-cv-

01033-DAD-JDP (E.D. Cal.). The case remains pending.

        (d)     On July 8, 2023, 43-year-old inmate Michael Prince died at the Sacramento

County Jail. On July 2, 2023, Prince was admitted to the jail with a medical history including serious

mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes

mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral

neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III;

tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2,

2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to Prince's obvious and

deteriorating medical condition. On July 8, 2023, Prince was found dead in his cell. The *Mays* medical

expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did

not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a

patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not

monitor the patient for the six days the patient was in the unit. The patient died on the morning of

7/8/2023." *Mays*, *supra*, ECF No. 168-1 at 15 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed.

*Estate of Prince v. County of Sacramento*, No. 2:24-cv-00992-DC-JDP (E.D. Cal.). The case was settled

pre-trial.

        (e)     On July 20, 2023, 37-year-old inmate Cody Catanzarite died at the Sacramento

County Jail. Catanzarite was admitted and booked into detoxification housing after reporting that he had

ingested fentanyl, and he had a history of fentanyl use and alcohol consumption. The intake nurse did not

issue routine orders, such as alcohol/opioid withdrawal monitoring, detox medication regimens, or urgent

referral to a medical provider. The next day, Catanzarite went into cardiac arrest and died of a drug

overdose. The *Mays* medical expert monitors found: "concerns are that after Tier 1 screening, the patient

was taken out of the booking loop for processing by custody before Tier 2 medical screening was

conducted. In the 5.5 hours before a nurse saw the patient, his COWS score increased from 1 to 9. Given

21

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Washington v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

his history of fentanyl and alcohol substance use disorder, starting the patient on opioid and alcohol detox regimens needed to be considered, however because Tier 2 screening was delayed, it was not." *Mays*, *supra*, ECF No. 168-1 at 142 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of Catanzarite v. County of Sacramento*, No. 2:24-cv-01123-DAD-CKD (E.D. Cal.). The case was settled pre-trial.

(f)     On April 5, 2023, 35-year-old inmate Delion Johnson died of an overdose at the Sacramento County Jail. Johnson was inadequately searched and monitored by jail staff upon intake, who failed to detect a "golf-ball sized" baggie of pills in Johnson's jacket. Inside a holding cell, Johnson distributed and ingested drugs over the course of several hours, within sight of an in-cell surveillance camera which was unmonitored by jail staff, and as jail staff walked by but failed to look into the cell while conducting "safety checks." Eventually, Johnson lost consciousness and passed out inside of the cell. Johnson medical emergency was undetected or ignored for more than three hours, as several jail staff members walked by the cell, without observing or checking on Johnson. Later, an inmate worker alerted a jail staff member to Johnson's condition. But it was too late and Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, No. 2:23-cv-01304-DC-JDP (E.D. Cal.). The case remains pending.

(g)     On February 15, 2022, 37-year-old inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. The jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. *Mays*, *supra*, ECF No. 153-4; *Mays*, *supra*, ECF No. 162-1 at 76. A civil rights lawsuit was filed. *Galley v. County of Sacramento*, No. 2:23-cv-00325-WBS-AC (E.D. Cal.). The case remains pending.

(h)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. The jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed but the jail staff failed to recognize that Noble did not eat or drink for two

1    days prior to his death. Sacramento County Sheriff's Department, Report No. 2021-224861;

2    <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.

3              (i)    On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County

4    Main Jail and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from

5    mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical

6    screening exam where the nurse concluded he was "fit for incarceration," after Welde's urine drug

7    screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde

8    was "engaging in erratic behavior, such as kicking his door and talking nonsensically." On August 2,

9    2020, Welde was transferred to the mental health housing unit and his condition continued to deteriorate,

10   including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling

11   unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back

12   up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." The jail staff ignored the

13   risk to Welde because "nursing staff believed Welde was outside the time period for detoxing from drug

14   use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded

15   that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental

16   health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and

17   "bouncing back and forth on the balls of his feet." The jail staff asked Welde if he was okay and, in

18   response, Welde "grunted and shook his head." The jail staff continued to ignore Welde. An hour later,

19   Welde was found lying "face down and naked" on the floor. The jail staff continued to ignore him. Later,

20   the jail staff entered the cell and determined that Welde was not breathing and had no pulse. Sacramento

21   County Sheriff's Department, Report No. 2020-248721; <https://www.sacda.org/wp-

22   content/uploads/2022/10/ICD-Review-Welde-.pdf>.

23              (j)    On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County

24   Main Jail and died of "methamphetamine intoxication." Armstead was booked into the jail and

25   participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day

26   after booking, Armstead was summoned for a classification interview but failed to appear. Later, the jail

27   staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate

28   pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive.

Later, the jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. Sacramento County Sheriff's Department, Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.

60.    <u>Contraband</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's jail facilities are overrun with drugs, including fentanyl, which are readily available to inmates. For example:

(a)    On January 27, 2025, the *Mays* consent decree monitors reported: "Deaths from drug overdoses continue. Custody has implemented increased measures to prevent drugs from coming into the jail. This includes enhanced inmate searches and separation of new arrivals from the general population. The Sheriff's office has implemented searches of non-uniformed staff, including health care. These measures have been insufficient to keep drugs out of the jail, and inmates reported to with us that drugs are readily available to them. Further measures need to be taken to prevent illicit drugs from entering the jail. At present, there are no measures in place to detect the introduction of contraband by custody staff. In our experience at jails and prisons across the country, including California Department of Corrections and Rehabilitation (CDCR), all staff, including uniformed staff are subject to searches for contraband." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal. Jan. 27, 2025).

(b)    On September 19, 2024, it was reported that, since 2023, "there have been six confirmed or suspected in-custody fentanyl deaths in the Sacramento County jail," including "three confirmed overdose deaths in 2024," and, from January to September 2024, "110 doses of Narcan [were] administered to inmates either by a deputy or another inmate." *Some hiding drugs inside their bodies to smuggle it into Sacramento County jail, sheriff says* (Sep. 19, 2024), available at: <https://www.abc10.com/article/news/local/sacramento-county-addressing-fentanyl-jails-and-overdoses/103-67dae270-168c-4f0a-8e41-a81f1574060e>.

(c)    On July 16, 2024, *Mays* consent decree monitors reported that, following site visits at the jail facilities, "[i]nmates report that they have easy access to substances, including fentanyl," and "inmates reported to us that drugs were widely available, and if they 'put in an order today, I can pick it up tomorrow.'" *Mays*, *supra*, ECF No. 180-1 at 78 n.82, 95 n.94 (E.D. Cal. July 16, 2024).

(d)    On September 27, 2023, it was reported that at least six persons were "charged

with smuggling drugs and tools into the jail in August [2023]," including "Zareonna Harris who worked

as a medical assistant at the jail," "worked with inmates and others to distribute drugs at the jail," and

"was caught on surveillance video giving drugs to an inmate and … receiving drugs outside of the jail."

*Sacramento Co. sheriff blames county program after 6 accused of smuggling drugs into jail* (Sep. 27,

2023), available at: <https://www.abc10.com/article/news/local/sacramento-county-sheriff-frustrated-

adult-correctional-health-program/103-d3ce63b7-187e-4502-a77a-cbd463e5b114>.

   (e) On August 15, 2023, *Mays* consent decree monitors reported that, following site

visits at the jail facilities, "[m]edical record review and patient interviews show that inmates have free

*access to opioids and other drugs, including fentanyl,*'" and that "[i]t has become apparent that drugs,

including fentanyl are readily available at Main Jail, and at RCCC." *Mays*, *supra*, ECF No. 168-1 at 15,

112 (E.D. Cal. Aug. 15, 2024).

   (f) On August 14, 2023, Defendant COUNTY OF SACRAMENTO acknowledged

"that drugs smuggled into the [Sacramento County Mail Jail] is a serious concern." *Letter re: Custody*

*Staff Screening Measures* (Aug. 14, 2023), available at:

<https://www.disabilityrightsca.org/system/files/file-attachments/23.08.14%20-

%20Mays_County%27s%20Response%20re_%20Letter%20re_%20Custody%20Staff%20Screening%2

0Measures.pdf>. Nonetheless, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

SHERIFF'S DEPARTMENT, and JIM COOPER refused to implement a policy to routinely search

custody staff while "currently ha[ving] no policy requiring custody staff to be screened in any way when

they enter the jails." *Letter to Sheriff Jim Cooper* (Aug. 7, 2023), available at:

<https://www.disabilityrightsca.org/system/files/file-

attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf

>.

   (g) On August 7, 2023, it was reported that Defendants COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's "own

data" demonstrated that "Narcan, the life-saving emergency treatment for opioid overdose, ha[d] been

administered at the Jail around 30 times since February 1, 2023."

<https://www.disabilityrightsca.org/system/files/file-

attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf
>.

       (h)     On August 2, 2023, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER "acknowledged that drugs are widely available at the jails." <https://www.disabilityrightsca.org/system/files/file-attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf
>.

       (i)     On April 5, 2023, 35-year-old inmate Delion Johnson was booked into the Sacramento County Main Jail with a clear plastic bag containing about 45 pills, including a lethal quantity of fentanyl, and described as larger than "golf ball sized." During the booking process, Johnson was subject to two separate body scans using a Tek84 Intercept body scanner and a pat-down search conducted by two different deputy sheriffs. The bag of pills was not detected or confiscated. In a holding cell, Johnson distributed several pills to several other inmates and ingested a lethal quantity of fentanyl, all while visible to jail staff on closed-circuit television (CCTV) monitoring and during safety checks. These activities were not monitored or detected by jail staff and Johnson overdosed inside of the cell. Johnson's lifeless body was not discovered by jail staff until more than four hours later, when an inmate-worker alerted jail staff that Johnson was non-responsive. Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, No. 2:23-cv-01304-DC-JDP (E.D. Cal.). The case remains pending.

       61.     <u>Lack of Leadership</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT lack competent leadership, including where Defendants ERIC SERGIENKO and JIM COOPER have consistently failed to facilitate and provide adequate care for inmates/patients at the jail. For example, on January 27, 2025, the *Mays* consent decree monitors found that, during the period that ASAIAH WASHINGTON died in the jail, "**The County lacks adequate medical leadership at the jail.** [¶] The Consent Decree provisions that are related to medical care have not continued to improve. The areas of inadequate progress include: medical provider backlogs, utilization management, specialty services, chronic disease tracking system, adoption of clinical guidelines, and a medically supervised

26

substance withdrawal program. In addition, the County has not developed a system to regularly review provider quality. Previous reports have identified systemic issues in each of these areas, but the County has not meaningfully responded to these issues and most of these areas either have not improved or have worsened. [¶] The monitors identified patients with serious medical needs that required medical intervention and follow-up. We forwarded these cases to the County to coordinate follow-up care. However, the County took no action to provide these patients needed medical care, weeks or months after forwarding the cases to medical leadership. [¶] The County's failure to take action on behalf of these patients showed a callous disregard for their safety and well-being. In over 20 years of monitoring health care in prisons and jails, we have never encountered a situation in which medical leadership failed to ensure appropriate medical care follow-up of patients." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal. Jan. 27, 2025) (fn. omitted).

62.   <u>Admissions</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER have admitted that the inmate care provided at correctional facilities under their care is deficient. For example:

(a)   In June 2024, Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER's spokesperson, sergeant Amar Gandhi, stated: "Medical care seems to be the number one issue right now, of everything going on in our facilities, and—unfortunately—it's something that we have zero sphere of control over. * * * Right now, there's a very clear gap in the medical care required and what's being given." *County Jail inmates have died in the past month and a half. What's going on?* (June 20, 2024), available at: <https://www.abc10.com/article/news/local/sacramento-county-officials-talk-about-recent-jail-deaths/103-9cf90a3c-2b0f-4153-929a-287a3eda0e0b>.

(b)   On September 27, 2023, at a press conference, Defendant JIM COOPER stated, "I take responsibility for my deputies—their actions and what they do." Defendant JIM COOPER expressly disclaimed the actions of "jail medical [staff]" because "they're inept." Defendant JIM COOPER stated, "I'm at my breaking point," and raised concerns with the practice of transporting inmates to the emergency room, which required two deputies to accompany the inmate at the hospital: "Their method is, when there's a problem, it's just easier to send somebody out [to the emergency room]. That's not the

way you do it." *'I'm at my breaking point': Sacramento sheriff calls for jail health care overhaul* (Sep. 27, 2023), available at: <https://www.sacbee.com/news/local/article279795054.html>.

63.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including incidents and misconduct described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where personnel believe they can "get away with anything."

64.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of ASAIAH WASHINGTON

65.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates/patients was a moving force behind and contributed to the death of ASAIAH WASHINGTON.

## FIRST CLAIM

### Deliberate Indifference

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

66.    Plaintiff ESTATE OF ASAIAH WASHINGTON asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

67.    The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

68.    *Individual Liability*: Defendants DOE 1 to 20 inadequately supervised, monitored, and responded to ASAIAH WASHINGTON, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the United States Constitution.

69.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON, in violation of Fourteenth Amendment to the United States Constitution.

70.    Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

71.    ASAIAH WASHINGTON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH WASHINGTON to receive compensatory (survival) and nominal damages against Defendants COUNTY OF SACRAMENTO, SASACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder appears.

\ \ \

\ \ \

1

## SECOND CLAIM

2

**Title II of the Americans with Disabilities Act**

3

**(42 U.S.C. § 12101, *et seq.*)**

4      72.    Plaintiff ESTATE OF ASAIAH WASHINGTON (pursuant to California Code of Civil

5   Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO,

6   SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO

7   COUNTY SHERIFF'S DEPARTMENT.

8      73.    The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the

9   extent relevant and as if fully set forth in this Claim.

10      74.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

11   DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

12   DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28

13   C.F.R. § 35.104. ASAIAH WASHINGTON had an impairment that substantially limited one or more

14   major life activities and had a record of such an impairment.

15      75.    *Vicarious Liability*: Defendants DOE 1 to 20 failed reasonably to accommodate ASAIAH

16   WASHINGTON's disability, where a reasonable accommodation was available, including by, *inter alia*,

17   conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral

18   to a medical provider; transfer to a facility that could provide necessary medical care or treatment;

19   monitoring based on serious medical needs; and/or timely responding to serious medical needs, with

20   deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42

21   U.S.C. § 12101, *et seq.*

22      76.    *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

23   SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

24   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

25   customs of action and inaction resulting in harm to ASAIAH WASHINGTON, with deliberate

26   indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101,

27   *et seq.*

28      77.    Plaintiff ASAIAH WASHINGTON was injured as a direct and proximate result of

30

Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH WASHINGTON to receive compensatory (survival) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder appears.

### THIRD CLAIM

### § 504 of the Rehabilitation Act

### (29 U.S.C. § 701, *et seq.*)

78.    Plaintiff ESTATE OF ASAIAH WASHINGTON (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

79.    The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

80.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104, and receive federal financial assistance. ASAIAH WASHINGTON had an impairment that substantially limited one or more major life activities and had a record of such an impairment.

81.    *Vicarious Liability*: Defendants DOE 1 to 20 failed reasonably to accommodate ASAIAH WASHINGTON's disability, where a reasonable accommodation was available, including by, *inter alia*, conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral to a medical provider; transfer to a facility that could provide necessary medical care or treatment; monitoring based on serious medical needs; and/or timely responding to serious medical needs, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et*

31

*seq.*

82.     *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

83.     Plaintiff ASAIAH WASHINGTON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH WASHINGTON to receive compensatory (survival) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder appears.

## FOURTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

84.     Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

85.     The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

86.     Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON shared a close relationship and special bond with ASAIAH WASHINGTON, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON frequently visited

32

and spoke with ASAIAH WASHINGTON and shared a loving familial relationship.

87.    *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON's familial association with ASAIAH WASHINGTON, in the violation of the Fourteenth Amendment to the United States Constitution.

88.    Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

89.    Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON pray for relief as hereunder appears.

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

90.    Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

91.    The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the

33

extent relevant and as if fully set forth in this Claim.

92.     Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON shared a close relationship and special bond with ASAIAH WASHINGTON, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON frequently visited and spoke with ASAIAH WASHINGTON and shared a loving familial relationship.

93.     *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON's familial association with ASAIAH WASHINGTON, in the violation of the First Amendment to the United States Constitution.

94.     Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

95.     Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20

WHEREFORE, Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON pray for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

**SIXTH CLAIM**

**Failure to Summon Medical Care**

**(Cal. Gov. Code § 845.6)**

96.     Plaintiff ESTATE OF ASAIAH WASHINGTON asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

97.     The allegations of the preceding paragraphs 1 to 65 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

98.     *Individual Liability*: Defendants DOE 1 to 20 knew or had reason to know that ASAIAH WASHINGTON was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

99.     *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON, in violation of California Government Code § 845.6.

100.     *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, JIM COOPER, and/or DOE 1 to 20.

101.     Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

102.     ASAIAH WASHINGTON was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

35

1   COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH

2   WASHINGTON to receive compensatory (survival) and nominal damages against Defendants COUNTY

3   OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

4   SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to

5   20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

6       WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder

7   appears.

8                                    **SEVENTH CLAIM**

9                                **Tom Bane Civil Rights Act**

10                               **(Cal. Civ. Code § 52.1)**

11      103.    Plaintiffs ESTATE OF ASAIAH WASHINGTON (pursuant to California Code of Civil

12  Procedure § 377.30), TONETTE WASHINGTON, and JADAH WASHINGTON assert this Claim

13  against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF

14  HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT,

15  JIM COOPER, and DOE 1 to 20.

16      104.    The allegations of the preceding paragraphs 1 to 102 are realleged and incorporated, to the

17  extent relevant and as if fully set forth in this Claim.

18                                  Deliberate Indifference

19      105.    *Individual Liability*: Defendants DOE 1 to 20 inadequately supervised, monitored, and

20  responded to ASAIAH WASHINGTON, putting him at substantial risk of suffering serious harm,

21  without taking reasonable available measures to abate that risk, where a reasonable official in the

22  circumstances would have appreciated the high degree of risk involved, with deliberate indifference or

23  reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and

24  Article I, § 7(a) of the California Constitution.

25      106.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

26  SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

27  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

28  customs of action and inaction resulting in harm to ASAIAH WASHINGTON, with deliberate

                                         36

1  indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States

2  Constitution; and Article I, § 7(a) of the California Constitution.

3  <u>Title II of the Americans with Disabilities Act & § 504 of the Rehabilitation Act</u>

4  107.    *Vicarious Liability*: Defendants DOE 1 to 20 failed reasonably to accommodate ASAIAH

5  WASHINGTON's disability, where a reasonable accommodation was available, including by, *inter alia*,

6  conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral

7  to a medical provider; transfer to a facility that could provide necessary medical care or treatment;

8  monitoring based on serious medical needs; and/or timely responding to serious medical needs, with

9  deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42

10 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

11 108.    *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

12 SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

13 SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

14 customs of action and inaction resulting in harm to ASAIAH WASHINGTON, with deliberate

15 indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101,

16 *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

17 <u>Unwarranted Interference with Familial Association</u>

18 109.    *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF

19 SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

20 SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to

21 20 caused the unwarranted interference with, and premature termination of, Plaintiffs TONETTE

22 WASHINGTON and JADAH WASHINGTON's familial association with ASAIAH WASHINGTON,

23 with deliberate indifference or reckless disregard, in violation of the First and Fourteenth Amendments to

24 the United States Constitution; and Article I, Section 7(a) of the California Constitution.

25 <u>Failure to Summon Medical Care</u>

26 110.    *Individual Liability*: Defendants DOE 1 to 20 knew or had reason to know that ASAIAH

27 WASHINGTON was in need of immediate medical care and failed to take reasonable action to summon

28 such medical care, with deliberate indifference or reckless disregard, in violation of California

Government Code § 845.6.

111.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

*    *    *

(Allegations Common to All Theories)

112.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, JIM COOPER, and/or DOE 1 to 20.

113.    Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

114.    ASAIAH WASHINGTON and Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON to receive compensatory (survival and wrongful death) and treble damages and penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON pray for relief as hereunder appears.

## EIGHTH CLAIM

### Intentional Infliction of Emotional Distress

115.    Plaintiff ESTATE OF ASAIAH WASHINGTON asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants DOE 1 to 20.

116.    The allegations of the preceding paragraphs 1 to 114 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

117.    *Individual Liability*: Defendants DOE 1 to 20 engaged in outrageous conduct, including by inadequately supervising, monitoring, and responding to ASAIAH WASHINGTON's personal safety risks and serious medical needs, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that ASAIAH WASHINGTON would suffer emotional distress and he did suffer severe emotional distress.

118.    Defendants DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

119.    ASAIAH WASHINGTON was injured as a direct and proximate result of Defendants DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH WASHINGTON to receive compensatory (survival) and nominal damages against Defendants DOE 1 to 20; and punitive damages against Defendants DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder appears.

## NINTH CLAIM

### Negligence

120.    Plaintiff ESTATE OF ASAIAH WASHINGTON asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

121.    The allegations of the preceding paragraphs 1 to 119 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

122.    *Individual Liability*: Defendants DOE 1 to 20 owed ASAIAH WASHINGTON a duty of care and breached that duty, including by inadequately supervising, monitoring, and responding to ASAIAH WASHINGTON's personal safety risks and serious medical needs, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

123.    *Supervisory Liability*: Defendants ERIC SERGIENKO and JIM COOPER owed ASAIAH WASHINGTON a duty of care, including through (a) Defendants ERIC SERGIENKO and JIM COOPER's own conduct in creating or increasing an unreasonable risk of harm to ASAIAH WASHINGTON; (b) Defendants ERIC SERGIENKO and JIM COOPER's special relationships (employer-employee) with Defendants DOE 1 to 20; and/or (c) Defendants ERIC SERGIENKO and JIM COOPER's special relationships (public protection and/or jailer-prisoner) with, and affirmative duty to protect, ASAIAH WASHINGTON, and breached that duty including by maintaining policies or customs of action and inaction which resulted in harm to ASAIAH WASHINGTON in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

124.    *Municipal Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON, in violation of California Government Code §§ 815.6, 845.6.

125.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, JIM COOPER, DAVID GODWIN, and/or DOE 1 to 20.

126.    Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

127.    ASAIAH WASHINGTON was injured as a direct and proximate result of Defendants

40

1  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

2  SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

3  COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF ASAIAH

4  WASHINGTON to receive compensatory (survival) damages against Defendants COUNTY OF

5  SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

6  SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to

7  20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

8      WHEREFORE, Plaintiff ESTATE OF ASAIAH WASHINGTON prays for relief as hereunder

9  appears.

10                          **TENTH CLAIM**

11                         **Wrongful Death**

12                    **(Cal. Code Civ. Proc. § 377.60)**

13      128.    Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON assert this Claim

14  against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF

15  HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT,

16  JIM COOPER, and DOE 1 to 20.

17      129.    The allegations of the preceding paragraphs 1 to 127 are realleged and incorporated, to the

18  extent relevant and as if fully set forth in this Claim.

19      130.    Plaintiff TONETTE WASHINGTON was the legal spouse of ASAIAH WASHINGTON,

20  prior to ASAIAH WASHINGTON's death.

21      131.    ASAIAH WASHINGTON and Plaintiff JADAH WASHINGTON shared a natural parent-

22  child relationship. ASAIAH WASHINGTON held out Plaintiff JADAH WASHINGTON as his own.

23  ASAIAH WASHINGTON frequently visited and spoke with Plaintiff JADAH WASHINGTON and

24  shared a loving father-daughter relationship, prior to ASAIAH WASHINGTON's death. ASAIAH

25  WASHINGTON is the biological parent of Plaintiff JADAH WASHINGTON.

26      132.    *Individual Liability*: Defendants DOE 1 to 20 caused ASAIAH WASHINGTON's death

27  by wrongful act and neglect, including by inadequately supervising, monitoring, and responding to

28  ASAIAH WASHINGTON's personal safety risks and serious medical needs, in violation of the United

                                    41

States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

133.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER caused ASAIAH WASHINGTON's death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to ASAIAH WASHINGTON in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Government Code §§ 815.6, 845.6, and/or California Civil Code § 1714(a).

134.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, JIM COOPER, and/or DOE 1 to 20.

135.    Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

136.    ASAIAH WASHINGTON died as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON to receive compensatory (wrongful death) damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs TONETTE WASHINGTON and JADAH WASHINGTON pray for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON seek Judgment as follows:

1.    For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, according to proof at trial;

2.    For an award of exemplary/punitive damages against Defendants ERIC SERGIENKO, JIM COOPER, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.    For funeral and/or burial expenses;

4.    For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code § 818);

5.    For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

6.    For interest; and

\ \ \

\ \ \

1    7.    For an award of any other further relief, as the Court deems fair, just, and equitable.

2    Dated: July 30, 2025                Respectfully Submitted,

3

4

5    By: _____

6         Mark E. Merin
         Paul H. Masuhara
7         LAW OFFICE OF MARK E. MERIN
         1010 F Street, Suite 300
8         Sacramento, California 95814
         Telephone: (916) 443-6911
9         Facsimile: (916) 447-8336

10        Attorneys for Plaintiffs
         ESTATE OF ASAIAH WASHINGTON,
11        TONETTE WASHINGTON, and JADAH WASHINGTON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF ASAIAH WASHINGTON, TONETTE WASHINGTON, and JADAH WASHINGTON.

Dated: July 30, 2025                    Respectfully Submitted,

By: _____
      Mark E. Merin
      Paul H. Masuhara
      LAW OFFICE OF MARK E. MERIN
      1010 F Street, Suite 300
      Sacramento, California 95814
      Telephone: (916) 443-6911
      Facsimile: (916) 447-8336

      Attorneys for Plaintiffs
      ESTATE OF ASAIAH WASHINGTON,
      TONETTE WASHINGTON, and JADAH WASHINGTON